<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHAD GRIFFITH,<br><br>      Plaintiff,<br><br> v.<br><br>CIOX HEALTH,<br><br>      Defendant. | Civil Action No. 23-20513 (GC) (JTQ)<br><br>**<u>MEMORANDUM OPINION</u>** |

**<u>CASTNER, District Judge</u>**

  **THIS MATTER** comes before the Court upon Defendant Ciox Health's unopposed[1] Motion to Dismiss *pro se* Plaintiff Chad Griffith's Complaint pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). (ECF No. 13.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's Motion is **GRANTED in part** and **DENIED in part.**

---

[1] The deadline for Plaintiff to oppose Defendant's Motion has elapsed and Plaintiff has failed to file any opposition. Given that Plaintiff is proceeding *pro se* and therefore is not "an experienced litigator," the Court is required to address Defendant's Motion to Dismiss on the merits even when unopposed by Plaintiff. *Jones v. Unemployment Comp. Bd. of Rev.*, 381 F. App'x 187, 189 (3d Cir. 2010).

**BACKGROUND**[2]

Plaintiff Chad Griffith is a former employee of Defendant Ciox Health. (ECF 1 at 8.)[3] Plaintiff states that he is disabled, having been diagnosed with ADHD and PTSD. (*Id*.) Ciox hired Plaintiff as a client service representative in June 2015. (*Id*.) Daniel Schaaf, a senior manager at Ciox, was Plaintiff's manager and, in February 2021, Schaaf promoted Plaintiff to intake supervisor. (*Id*.) Soon after, on March 31, 2021, Schaaf resigned from Ciox. (*Id*.)

Another Ciox employee, Megan Shaw, assumed Schaaf's duties including managing Plaintiff. (*Id*.) Plaintiff states that he met with Shaw on April 14, 2021 to disclose that he suffered from ADHD and anxiety and sought various accommodations, including "transparency and open/honest communication." (*Id*. at 15-16.) Plaintiff states that Shaw was supportive and asked him to trust her. (*Id*. at 16.)

On April 19, 2021, Shaw asked Plaintiff why he had not followed up with her regarding a client issue. (*Id*.) Plaintiff "took offense" to Shaw's question because he and Shaw "discussed everything regarding this [client issue] the previous week." (*Id*.) Plaintiff believed that he was being "held liable" for not following up with Shaw despite "[doing] everything [he] was asked to do" and, at around 4:00 PM—the time Plaintiff usually stops working—Plaintiff told Shaw he was signing off for the evening. (*Id*.) The following day, Shaw and a human resources representative, Juliette Maddox, scheduled a meeting with Plaintiff in which they alleged that he left work early,

---

[2]   The factual allegations recited here are based on Plaintiff's Complaint and exhibits, particularly Exhibit A, Plaintiff's January 18, 2022 Equal Employment Opportunity Commission (EEOC) Charge of Discrimination. On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

[3]   Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

2

which Plaintiff denied. (*Id*. at 17.) During that meeting, Plaintiff states that he had an "anxiety attack" and became "withdrawn and defensive." (*Id*.) Plaintiff alleges that "Ms. Shaw's behavior made [him] unable . . . to trust her." (*Id*.) Plaintiff requested to be removed from Shaw's team as he "believed that [he] was at risk of future abuse." (*Id*.)

On April 23, 2021, Plaintiff again met with Shaw and Maddox, who detailed a variety of alleged infractions that Plaintiff had committed. (*Id*. at 18.) Plaintiff stated that Shaw "incorrectly represented the claims" and that Shaw was not honest about their interactions. (*Id*.) Plaintiff subsequently refused to sign a "Corrective Action" plan document because, Plaintiff alleges, it was an example of Shaw "using her position to abuse [him]." (*Id*. at 19.) The same day, Plaintiff filed a "claim of abuse" against Shaw with human resources. (*Id*.) The claim detailed "specifically how and why [Plaintiff] believe[d] Ms. Shaw was using her position and machinations to facilitate [his] abuse." (*Id*.) During a follow-up meeting, Maddox and another human resources representative, Crystal Thudium, told Plaintiff that there was no evidence to support his abuse claim. (*Id*. at 20.)

On April 27, Plaintiff asked Maddox for reasonable accommodations for his Seasonal Affective Disorder. (*Id*.) Maddox said that she would discuss his request with management and get back to him. (*Id*.) Plaintiff scheduled another meeting with Shaw, Maddox, and Thudium on May 3, 2021 to "review [his] conduct in response to the Corrective Action against [him]." (*Id*. at 21.) During that meeting, Plaintiff requested that the group discuss "how [he could] be better." (*Id*.) Plaintiff alleges that Shaw "conveyed conflicting information and stances," and that Thudium became frustrated with Plaintiff's questions. (*Id*.) Plaintiff subsequently asked human resources to give their "official position on [his] claim for abuse in writing" so that he could present it for his disability claim. (*Id*.)

3

On May 6, 2021, Ciox's human resources department informed Plaintiff that Shaw would no longer be his immediate supervisor. (*Id*. at 21-22.) At this point, Plaintiff "began to believe things would get better." (*Id*. at 21.) He states that he "continued to check in with . . . Shaw for the remainder of the week" and was not "given any indication that [his] job performance was lacking." (*Id*. at 22.) On May 10, 2021, Plaintiff alleges that Maddox and Shaw terminated him because, in their words, "it wasn't working out." (*Id*.) Plaintiff contends that he was fired so that Ciox could avoid having "to complete the abuse report or facilitate [Plaintiff's] reasonable accommodations in a perceived unsafe work environment." *(Id*. at 9.)

On January 18, 2022, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC). (*Id*. at 15.) Plaintiff claims that he received a Notice of Right to Sue Letter on June 21, 2023. (*Id*. at 6.) On September 19, 2023, Plaintiff filed his Complaint *in forma pauperis* asserting a retaliation claim under Title VII of the Civil Rights Act of 1964 (Title VII) and discrimination and retaliation claims under the Americans with Disabilities Act (ADA). (*Id*. at 4-5.) Defendant thereafter filed a Motion to Dismiss Plaintiff's Complaint. (ECF No. 13.)

I.  **LEGAL STANDARD**

    A.  **Rule 12(b)(6) – Failure to State a Claim[4]**

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim

---

[4]  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

### B. *Pro Se* Leniency

Plaintiff is proceeding *pro se* and "[t]he obligation to liberally construe a pro se litigant's pleadings is well-established." *Higgs v. Att'y Gen. of the United States*, 655 F.3d 333, 339 (3d.Cir 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "'Courts are to construe complaints so 'as to do substantial justice,' Fed. R. Civ. P. 8(f), keeping in mind that *pro se* complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004). "Liberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). "[P]*ro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

5

## II.   DISCUSSION

### A.   Title VII Retaliation Claim

Plaintiff brings a Title VII retaliation claim. Title VII prohibits discriminatory employment practices based on an individual's race, color, religion, or national origin. 42 U.S.C. § 2000e-2(a). Additionally, Title VII provides that it "shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) *see also Moore v. City of Philadelphia*, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.") (internal citations omitted). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must plead (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action. *See Abramson v. William Paterson Coll.,* 260 F.3d 265, 286 (3d Cir. 2001).

With respect to "protected activity," the anti-retaliation provision of Title VII "protects those who participate in certain Title VII proceedings (the "participation clause") and those who oppose discrimination made unlawful by Title VII (the "opposition clause")." *Moore*, 461 F.3d at 341. Further, the "employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Id.* (citing *Clark County v. Breeden*, 532 U.S. 268 (2001) (rejecting retaliation claim where "[n]o reasonable person could have believed that" the underlying incident complained about "violated Title VII's standard" for unlawful discrimination.). Moreover, "the employee's opposition to unlawful discrimination must not be equivocal." *Id.* (internal citations omitted).

6

Here, Plaintiff fails to allege that he engaged in any activity in which he opposed unlawful conduct under Title VII. In the standard form "Complaint for Employment Discrimination," Plaintiff checks the boxes for race, color, and gender/sex discrimination. (ECF No. 1 at 5.) However, Plaintiff does not allege that he ever complained of discrimination related to any of these categories.[5] Based on the allegations in the Complaint and the attached EEOC Charge of Discrimination, Plaintiff's retaliation claim appears to be premised on his filing of the abuse report against Shaw and his request for certain disability accommodations. (See ECF No. 1 at 9.) However, nothing in the Complaint indicates that Plaintiff filed the abuse report in response to racial or gender/sex discrimination. *See Davis v. City of Newark*, 417 F. App'x 201, 202 (3d Cir. 2011) ("Not every complaint or report entitles its author to protection from retaliation under Title VII. . . . Rather, only complaints about discrimination . . . on the basis of race, color, religion, sex, or national origin . . . constitute 'protected activity.'"). Furthermore, as Defendant correctly argues, disability is not a protected class under Title VII. *See Patterson v. AFSCME #2456*, 320 F. App'x 143, 147 (3d Cir. 2009) (affirming the district court's dismissal of Title VII claim because Plaintiff "did not claim she suffered discrimination based on the basis of a characteristic protected by Title VII. Rather, she argued that she suffered discrimination on account of her cognitive disabilities.") Therefore, Plaintiff's Title VII retaliation claim is dismissed.

B.  **ADA Discrimination Claim**

Plaintiff also brings a discrimination claim under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*, which prohibits employers from discriminating against qualified employees due to their disabilities. The Court construes Plaintiff's Complaint as asserting an ADA

---

[5] In fact, beyond Plaintiff checking these boxes for race, color, and gender/sex discrimination in the standard form "Complaint for Employment Discrimination," (ECF No. 1 at 5), the Complaint otherwise contains no references to Plaintiff's race, color, or gender/sex.

7

discrimination claim based on Defendant's failure to provide him with reasonable accommodations.[6]  (ECF No. 1 at 23.)

An employer violates the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship."  42 U.S.C. § 12112(b)(5)(A).  To establish a *prima facie* claim for failure to accommodate under the ADA, Plaintiff must allege that (1) he has a disability within the meaning of the ADA and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated."  *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017)

1. Pleading a Disability under the ADA

Plaintiff has sufficiently alleged that he is "disabled" under the ADA.  A disability within the meaning of the ADA is: "(A) a physical or mental impairment that *substantially limits* one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1) (emphasis added).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).

---

[6] Although Plaintiff's Court-generated Complaint solely asserts a retaliation claim, the attachments to the Complaint refer to a potential failure to accommodate claim. (*see*, *e.g.*, ECF No. 1 at 23) ("I believe [I] was denied reasonable accommodation . . . in violation of the Americans with Disability Act"); *see also Alston*, 363 F.3d at 234 ("'Courts are to construe complaints so 'as to do substantial justice,' Fed. R. Civ. P. 8(f), keeping in mind that pro se complaints in particular should be construed liberally.").

The Court assesses whether a person is "substantially limited" in a major life activity on a case-by-case basis. *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 167 (3d Cir. 2015); *see also* 29 C.F.R. § 1630.2(j)(1)(iv) (requiring "individualized assessment"). The standard is not a demanding one, and "should not demand extensive analysis." 29 C.F.R. § 1630.2(i)(2), (j)(i), (j)(iii). The regulations emphasize that the term "substantially limits" shall be construed broadly. *See, e.g.,* 29 C.F.R. § 1630.2(i)(2) (the term "major" "shall not be interpreted strictly to create a demanding standard for disability"); *id.* § 1630.2(j)(1)(i) ("The term 'substantially limits' shall be construed broadly in favor of expansive coverage …. 'Substantially limits' is not meant to be a demanding standard.").

Defendant argues that Plaintiff has not sufficiently pled that he is a "disabled person" under the ADA. (ECF 13-1 at 17.) Defendant contends that Plaintiff's allegations "that he has ADHD, PTSD, and anxiety are–without more–insufficient to plead that he has a disability under the ADA." (*Id.*) It is true that conclusory allegations of suffering from a medical disability are not enough to qualify as disabled under the ADA. *See Sproul v. Sunpro Solar*, Civ. No. 22-1439, 2023 WL 3548976 (W.D. Pa. May 18, 2023) (dismissing ADA claim because while Plaintiff states that he suffers from IBS, anxiety, and depression, he fails to provide details on how these impairments substantially limits one or more major life activities). But Plaintiff does more than claim diagnoses of certain medical conditions; he also alleges that these medical conditions affected his work—a "major life activity" under the ADA. 42 U.S.C. § 12102(1) ("'[M]ajor life activities include…working"). Specifically, Plaintiff states that, during an April 14, 2021 meeting, he advised Shaw that he has ADHD and that his "anxiety was incredible" because he was overwhelmed and faced "[d]ifficulties" when "trying to get things moving" with respect to his job responsibilities. (*Id.*)

9

Plaintiff also attaches a SSA letter confirming his entitlement to disability benefits.[7] (*See* ECF No. 1 at 31.) While Plaintiff will later be required to "prove, not merely allege, that he was substantially limited in a major life activity," *Honauer v. N. Jersey Truck Ctr.*, Civ. No. 19-894, 2020 WL 5422824, at *3 (D.N.J. Sept. 10, 2020), the Court finds his allegations sufficient to state a claim under the ADA for purposes of a motion to dismiss. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (holding that Plaintiff is not required to "go into the particulars about the life activity affected by [his] alleged disability or detail the nature of [his] substantial limitations" at the motion to dismiss stage); *see also Matthews*, 613 F. App'x at 168 ("A certain lack of specificity in Matthews's complaint makes some of his claims difficult to evaluate. . . . Nonetheless, on a motion to dismiss, we are bound take all factual allegations as true and make all reasonable inferences in the plaintiff's favor."); *Honauer*, 2020 WL 5422824, at *3 (finding that while "the complaint is silent as to the impact of [the plaintiff's] injury on how his impairments affected his life or how long he was affected by them," the plaintiff is not required to go into particulars at the pleading stage); *Willitts v. Engie N. Am. Inc.*, Civ. No. 20-11255, 2021 WL 2322833, at *8 (D. Mass. June 7, 2021) (stating that "[a]lthough it is difficult to ascertain from the complaint what disability [the pro se plaintiff] is referring to (i.e. depression, anxiety, stress, and/or ADHD)," the Court found the allegations "sufficient to state a plausible ADA claim particularly in light of the additional deference that is afforded to *pro se* litigants").

---

7   As previously noted, the attached letter includes many redactions, including the disability that forms the basis for Plaintiff's SSA benefits. However, drawing all reasonable inferences in Plaintiff's favor at this preliminary stage on a motion to dismiss, the Court will construe the attached SSA letter as further evidence of Plaintiff having alleged a qualified disability under the ADA for purposes of this motion to dismiss. Defendants can certainly renew their argument on summary judgment once they have the benefit of discovery.

### 2. Failure to Accommodate

The Court also finds that, at this preliminary stage, Plaintiff has alleged that Defendant failed to accommodate him. During the April 14, 2021 meeting with Shaw, Plaintiff states that he disclosed his medical conditions and requested that Shaw's "supervisory methods be altered as a form of reasonable accommodation." (ECF No. 1 at 15-16.) Specifically, Plaintiff sought "transparency and open/honest communication" and to be provided with certain supplies "in support of [his] disabilities." (*Id*. at 16.) At a later date, Plaintiff asked for "coaching" (which was denied) and information regarding the availability of reasonable accommodations for his seasonal affective disorder, such as changes to his "time schedule." (*Id*. at 19-20.) As Plaintiff's relationship with Shaw became increasingly mired in conflict, he requested a new manager.

While the Court will not address the reasonableness of each of these requests on this motion, Plaintiff has sufficiently alleged that Defendants failed to engage in the interactive process once a request was made by Plaintiff. The ADA requires that an employer make a good faith effort to "engage the employee in the interactive process of finding accommodations" that work for both parties. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319 (3d Cir. 1999). If an employer does not understand the exact nature of a requested accommodation, the "burden is on the employer to request additional information that the employer believes it needs." *Id*. at 315, 319 (also stating that "the interactive process would have little meaning if it was interpreted to allow employers, in the face of a request for accommodation, simply to sit back passively, offer nothing, and then, in post-termination litigation, try to knock down every specific accommodation as too burdensome."). To determine if an employer acted in "good faith," the Court looks to whether the employer "obstructs or delays the interactive process." *Id*. at 312 (quoting *Bultemeyer v. Fort Wayne Community Schools,* 100 F.3d 1281, 1285 (7th Cir.1996). Furthermore, "a party that fails to communicate, by way of initiation or response, may also be acting in bad faith." *Id*.

11

Plaintiff has sufficiently alleged that Defendant did not engage in the interactive process once Plaintiff made a request for an accommodation. While Shaw initially "validated" Plaintiff's request for accommodation and assured her support, there are no allegations regarding any follow-up by Defendant. (ECF No. 1 at 16-23). Instead, according to the Complaint, Shaw "made [Plaintiff's] job more difficult, and simply sat back and continued to document [his] failures." *Taylor*, 184 F.3d at 319. Even after Plaintiff was put on a corrective action plan, he states that he requested a meeting with Shaw and Thudium to review his conduct to "understand[ ] where I went wrong." (ECF No. 1 at 21.) During that meeting, Plaintiff alleges that Shaw refused to provide any specific instances of Plaintiff's misconduct and became defensive. (*Id*.) Thudium subsequently cut the meeting short and stated that Plaintiff "must not be a good fit." (*Id*.) Taking Plaintiff's allegations as true for purposes of this motion, the Court denies Defendant's motion to dismiss Plaintiff's ADA discrimination claim for failure to accommodate.

### C. ADA Retaliation Claim

Plaintiff also brings a claim under the ADA's anti-retaliation provision, 42 U.S.C. § 12203, alleging that his termination was motivated by (1) Plaintiff's filing of the abuse report; and (2) Plaintiff's request for accommodations. (ECF No.1 at 9.) The ADA's anti-retaliation provision, 42 U.S.C. § 12203(a), states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." *Id.* Retaliation and discrimination claims are distinct, as the former does "not require a plaintiff to prove that he or she has an actual disability; rather, a plaintiff need only show that he or she [engaged in protected conduct] in good faith." *Barber v. Subway*, 131 F. Supp. 3d 321, 329 (M.D. Pa. 2015) (citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003)); *see also Echevarria v. AstraZeneca Pharm. LP*, 856 F.3d 119, Civ. No. 15-2232, 2017 WL 1593474, at *9 (1st Cir. May 2, 2017) ("It is well settled

that an ADA plaintiff may assert a claim for retaliation even if she fails to succeed on a disability discrimination claim." (alterations omitted)).

A *prima facie* claim for retaliation under the ADA is analyzed under the same framework utilized in Title VII retaliation cases. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citing cases). A plaintiff must allege that (1) he engaged in protected conduct (i.e. made a complaint against an employer for a perceived violation of the ADA); (2) he suffered an adverse employment action by the defendant; and (3) there is a causal relationship between them. *See Abramson,* 260 F.3d at 286; *Bauer v. Ctr. for Animal Health & Welfare*, Civ. No. 24-4744, 2024 WL 4137321, at *2 (E.D. Pa. Sept. 10, 2024).

1.  Abuse Report

Defendant argues that Plaintiff fails to identify a protected activity, and therefore the retaliation claim fails on the first prong. (ECF No. 13-1 at 19.) The Court agrees with respect to a claim premised on Plaintiff's filing of the abuse report against Shaw. For a plaintiff to show they engaged in protected conduct, they must allege that they complained *specifically* about unlawful discrimination. *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995). A party can do so via formal charges of discrimination, "as well as informal protests of discriminatory employment practices, including making complaints to management." *Abramson*, 260 F.3d at 288 (*quoting Barber*, 68 F.3d at 287). Regardless of form, "[a] general complaint about unfair treatment does not constitute protected activity." *Bauer*, 2024 WL 137321, at *2.

While Plaintiff states that he submitted a report detailing Shaw's abusive behavior, he does not expressly allege that his disability was the reason for that abuse. *See Barber*, 68 F. 3d at 702 (holding that a letter sent to human resources did not constitute protected activity as it "d[id] not explicitly or implicitly allege that age was the reason for the alleged unfairness. A general complaint of unfair treatment does not translate into a charge of illegal [ ] discrimination.").

13

Because Plaintiff has not alleged that he engaged in protected conduct, his retaliation claim pertaining to the abuse report must be dismissed.

2. Accommodations Request

Plaintiff additionally claims that his termination was in retaliation for Plaintiff's request for accommodations. (*See* ECF No. 1 at 9.) Here, Plaintiff satisfies the first two prongs of the *prima facie* retaliation framework. Accommodation requests are a protected employee activity under the ADA. *See Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010) ("Prohibited discrimination under the ADA includes retaliation against an employee for requesting an accommodation"). And, termination is an established adverse employment action.[8] *Holmes-Mergucz v. Cellco P'ship*, Civ. No. 18-11816, 2021 WL 3163985, at *5 (D.N.J. July 27, 2021), *aff'd*, Civ. No. 21-2617, 2022 WL 16545589 (3d Cir. Oct. 31, 2022). Therefore, Plaintiff has adequately alleged that he engaged in protected conduct under the ADA and suffered an adverse employment action.

With respect to prong three, establishing a causal connection between a plaintiff's protected act and an employer's adverse action, the Third Circuit focuses on two factors: (1) timing; and (2) evidence of ongoing antagonism. *Abramson*, 260 F.3d at 288. The Complaint alleges that Plaintiff was terminated twenty-six days after requesting an accommodation. (*See generally* ECF No. 1.) While there is no bright line rule, the Third Circuit has found that anything within a three-month range can be "unusually suggestive of retaliatory motive." *Qin v. Vertex, Inc.*, 100 F.4th 458, 477

---

[8]   Defendant argues that Plaintiff failed to articulate how he was denied a "reasonable accommodation." (ECF No. 13-1 at 19.) The denial of a reasonable accommodation, however, is not the retaliation that forms the basis of Plaintiff's claim. Rather, Plaintiff claims that he was terminated in retaliation for his request for accommodations. (*See* ECF No. 1 at 9.) ("[Ciox] terminated [Plaintiff] in a manner that removed the need to . . . facilitate [Plaintiff's] reasonable accommodations.").

(3d Cir. 2024); *see also Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 221 (3d Cir. 2017) ("An inference of 'unduly suggestive' temporal proximity begins to dissipate where there is a gap of three months or more between the protected activity and the adverse action.") (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007)).

      Furthermore, Plaintiff has sufficiently alleged a period of ongoing antagonism. While courts consider a "broad array of evidence," it is important for Plaintiff to demonstrate "that the antagonistic behavior began *after* [the protected activity occurred]." *Incorvati v. Best Buy Co.*, Civ. No. 10-1939, 2013 WL 3283956, at *5 (D.N.J. June 27, 2013) (emphasis added); *see also Abramson,* 260 F.3d at 289 (crediting plaintiff's evidence of ongoing antagonism in light of evidence of plaintiff's superior's "change in demeanor after [plaintiff engaged in protected activity]"). There is no indication that Plaintiff was subject to disciplinary measures prior to the April 14, 2021 meeting with Shaw in which he disclosed his medical conditions and requested certain accommodations. (*See* ECF No. 1 at 15-16.) Plaintiff alleges that he previously had a "rapport of honesty and mentorship" with his prior supervisor, Daniel Schaaf. (*Id*. at 15.) Beginning on April 19, however, and continuing through his termination, Plaintiff alleges that he was subjected to a series of disciplinary meetings in which Shaw "needlessly escalated situations" and "gave [ ] false reports on [his] performance." (*Id*. at 22.) *See Robinson v. Se. Pa. Transp. Auth., Red Arrow Div.*, 982 F.2d 892, 895 (3d Cir. 1993) (deeming trial court's finding of a causal link to not be clearly erroneous when evidence was presented that the plaintiff was subjected to a "constant barrage of written and verbal warnings . . . , inaccurate point totalings, and disciplinary action, all of which occurred soon after plaintiff's initial complaints and continued until his discharge."). Drawing all reasonable inferences in his favor, Plaintiff has sufficiently alleged

15

temporal proximity and a sufficient period of ongoing antagonism to state a claim for retaliation under the ADA.

### III. <u>CONCLUSION</u>

For the foregoing reasons, and other good cause shown, Defendant's Motion to Dismiss (ECF No. 13) is **GRANTED in part** and **DENIED in part**. Plaintiff's Title VII retaliation claim is **DISMISSED** without prejudice in its entirety. Plaintiff's ADA retaliation claim is **DISMISSED** without prejudice with respect to the abuse report. The Motion is **DENIED** in all other respects, and the remaining counts in the Complaint shall proceed. An appropriate Order follows.

Dated: April 10, 2025

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**