IN THE UNITED STATES DISTRICT COURT OF NEW JERSEY
CIVIL DIVISION

CHAD GRIFFITH,

                                    Plaintiff,

v.

~~CIOX Health~~ Datavant,

                                    Defendant.

Civil Action No.: 3:23-cv-20513-GC-DEA

PLAINTIFF'S MOTION FOR
PROTECTIVE ORDER AND
<u>MOTION TO COMPEL</u>

Plaintiff ("Griffith") moves this Corut for an Order pursuant to FRCP 26(c) and 37:

1. Issuing a Protective Order limiting Defendant's improper discovery requests;

2. Compelling Defendant to produce the "abuse affidavit", "dispute" to the Disciplinary Action, delivered to HR on April 27th, 2021;

3. Any other relief the Court deems appropriate.

## I.   PRELIMINARY STATEMENTS

Defendant is weaponizing discovery while withholding core evidence central to this case.

Defendant owned the procedural and evidentiary history to inform of the truth of this case by October 14th, 2024, and in its Discovery Letter (*See generally* Dkt. #52), Hodgson Russ provides the mechanism of Defendant's Motion to Dismiss: using Griffith's "statements" against him and an inconsideration of veracity in the "characterizations" made specifically for the Motion to Dismiss.

1

Defendant is providing its pattern of obstruction and fraud, with Hodgson Russ informing the Court that it would not "concede" to owning Griffith's "abuse affidavit", "dispute" to the Disciplinary Action, after informing the Court that it both did not and did exist.

Griffith seeks targeted judicial intervention to:

- Stop abusive discovery practices

- Compel proper production, and

- Prevent further prejudice.

## II.    LEGAL STANDARD

PROTECTIVE ORDER
Under Rule 26(c), the Court may issue an order to protect a party from:
- Undue burden

- Harassment

- Overbroad discovery

MOTION TO COMPEL
Under Rule 37, the Court must compel disclosure where a party:
- Provides evasive answers

Evasive responses are treated as a failure to respond.

## III.    FACTUAL BACKGROUND

1. Griffith is a former employee of Defendant. *See* Dkt. #28, Answer 1, at 1.

2. In 2020, Griffith went on a medical leave of absence (short/long-term disability). *Id.* Answer 2, at 1.

3. In September 2020, following an exchange of Griffith's medical information between Griffith's doctor, Defendant, and Defendant's

2

disability provider, HR processed Griffith's return to work. *Id.* Answer 3, at 2.

4. In February 2021, Griffith was promoted to Intake Supervisor by Daniel Schaaf, Senior Manager of the EMRR Department. *Id.* Answer 4, at 2.

5. On or about March 31st, 2021, Daniel Schaaf resigned. *Id.* Answer 5, at 2.

6. On April 14th, 2021, Megan Shaw issued an assignment during the daily team meeting and demanded a projected completion date of the assignment. Megan Shaw's method/manner of responding to Griffith's questions confused him; Griffith asked Megan Shaw to participate in a one-on-one meeting after that morning's team meeting. *See* Dkt. #1 at 15.

   a. Griffith shared his disabilities, and informed Megan Shaw that her perceived manner of response exacerbated Griffith's disabilities, and still, without adequate feedback to understand the assignment, Griffith could not do his job. *Id.* at 15-16.

   b. After Megan Shaw understood Griffith's concerns, Megan Shaw requested that Griffith share:
       i. tracking and managing data regarding site(s) (*Id.*), and
       ii. organizing actionable tasks regarding site(s) (*Id.*),
           1. since Daniel Schaaf's departure (*Id.*).
   c. Griffith received positive feedback from Megan Shaw, praising his capabilities and proficiency in his work, inclusive

3

of facilitating "regionalization" (*See* Dkt. #28, Answer 4.a. at 2.). *Id.* at 16.

   d.   Griffith requested reasonable accommodations, including transparent and open/honest communication. *See* Dkt. #1 at 16.; *See* Dkt. #13, "Factual Background" at 7, para 2.

7.   On April 19th, 2021, department analysts investigated sites that were escalated to Megan Shaw as early as April 12th, 2021 of the previous week. *See* Dkt. #1 at 16.

   a.   While Griffith participated in the investigation, Megan Shaw privately messaged Griffith and demanded that Griffith prove he escalated site(s) to her. *Id.*

   b.   After Griffith did so, Megan Shaw then demanded to know if he spoke directly to her regarding the site(s).[12] *Id.*

Griffith shared his disappointment ("offense") and signed off for the evening. *Id.*

8.   On April 20th, 2021, Megan Shaw invited Griffith to a meeting with HR ("Juliette Maddox") – Megan Shaw did not disclose the purpose of the meeting prior to its start. *Id.* at 16-17.

   a.   When the meeting began, Juliette Maddox asked Griffith what he believed the meeting was about. After Griffith reported his concerns, Juliette Maddox informed Griffith that his concerns

---

[1] Griffith could not understand if/why:
- Megan Shaw did not know *or* remember that she and Griffith discussed the investigated sites, *more than once, on more than one occasion*:
  - via Microsoft Teams communications, and
  - in assignment(s):
    - issued during the team meeting on April 14th, 2021,
    - discussed/reviewed *immediately* after the team meeting, and
    - completed to Megan Shaw's satisfaction.
- Megan Shaw did not address the sites since they were escalated.
- Megan Shaw needed to assess Griffith's memory (*in a private meeting,* conducted *outside of the investigation regarding the same topics*).

[2] Griffith perceived Megan Shaw's questions as pre-emptive denial, which inherently implies/infers that Griffith did not do his job.

were not the subject of the meeting; Juliette Maddox informed Griffith that the (specific) subject of the meeting was Megan Shaw's miscalculation of Griffith's work time on April 19th, 2021. *Id.* at 17.

After necessity demanded that Griffith verbally count his work hours on April 19th, 2021 from start to finish, Juliette Maddox validated Griffith's work time as satisfactory. Megan Shaw and HR informed Griffith that he did "nothing wrong". *Id.*

9. Griffith did not meet with Megan Shaw and HR on April 21st, 2021.

10. Griffith did not meet with Megan Shaw and HR on April 22nd, 2021.

11. On April 23rd, 2021, Megan Shaw invited Griffith to a "Progress Report" meeting with HR ("Juliette Maddox", "Michele Speicher"); during the meeting, Megan Shaw issued a "Disciplinary Action" to Griffith. *Id.* at 18-19.

    a. After the meeting, Griffith followed up with HR ("Juliette Maddox") to report Megan Shaw for abuse and requested time to complete an "abuse affidavit" to "dispute" the "Disciplinary Action" meeting. *Id.* at 19.

12. On April 27th, 2021, Griffith delivered the "abuse affidavit" to HR ("Juliette Maddox") (*See* Dkt. #28, Answer 7.c. at 2); this document is comprised of Griffith's "statements" (*See* Dkt. #52 at 2, para 5) "and

5

evidence" "detailing" abuse[3], and a request for reasonable accommodations.[45] *See* Dkt. #1 at 20.

13. By about April 30th, 2021, HR ("Juliette Maddox", "Crystal Thudium") met with Griffith (*See* Dkt. #13, "Factual Background" at 8, para 4.) to inform him that "no evidence supported the" "abuse affidavit" and told Griffith to "just cooperate". *See* Dkt. #1 at 20.

14. On about April 30th, 2021, Griffith scheduled a meeting called "Alignment" for May 3rd, 2021 and invited Megan Shaw and HR ("Juliette Maddox", "Crystal Thudium" (*See* Dkt. #13, "Factual Background" at 8, para 4.)) to participate. *See* Dkt. #1 at 20.

15. At the start of "Alignment" meeting on May 3rd, 2021, Griffith informed the participants ("Megan Shaw", "Juliette Maddox", "Crystal Thudium") that he would be reviewing the [Disciplinary Action] [6] to learn how he should have responded in the allegations used for the [Disciplinary Action]. *Id.* at 21.

    a. In reviewing the first two allegations, Megan Shaw stated that Griffith engaged either allegation effectively *at the time of occurrence*. Megan Shaw presented "conflicting stances":

        i. Megan Shaw demonstrated that she knew Griffith performed adequately in his duties (*Id.* at 16.),

---

[3] Ms. Shaw's escalating behavior, including a/the conscious "misrepresentation and manipulation of data" to create the "Disciplinary Action" against Griffith by April 23rd, 2021.

[4] Juliette Maddox informed Griffith that reasonable accommodations are facilitated through the company's disability provider; due to prior history and nature of the abuse, Griffith requested his doctor's participation.

[5] Juliette Maddox postponed Griffith's reasonable accommodations until HR completed an "abuse report" – documentation that informs [the reader] that Griffith reported abuse and HR investigated the claims within the "abuse affidavit" Disciplinary Action.

[6] Previously, Griffith used "Corrective Action" and "Disciplinary Action" interchangeably; Griffith addressed the allegations used to construct the Disciplinary Action.

validated by HR ("Juliette Maddox") as recently as April 20th, 2021 (*Id.* at 16-18), but

ii. after the meeting on April 20th, 2021, Megan Shaw and HR refined allegations (specifically [/] incentivized to be volumetric) into specious claims for use in the [Disciplinary Action] (*Id.* at 19.), delivered to Griffith by April 23rd, 2021.[7]

b. Griffith asked Megan Shaw to explain why she used them – the two discussed allegations – if Griffith "did nothing wrong"; Megan Shaw did not respond further, leaving pending inquiries regarding the remaining allegations used for the Disciplinary Action. *See* Dkt. #1 at 21.

c. "Crystal Thudium" (HR) claimed that she did not have time for [the "Alignment" meeting], informed Griffith that he "must not be a good fit" (*See* Dkt. #13, "Factual Background" at 8, para 4.), and concluded the meeting. *See* Dkt. #1 at 21.

d. After the meeting, Griffith requested the official "abuse report" from HR ("Juliette Maddox", "Crystal Thudium") to file reasonable accommodations. *Id.*; *See* Dkt. #13, "Factual Background" at 8, para 4.

16. On May 5th, 2021, Griffith received a new permanent manager to start the week of May 10th, 2021; Megan Shaw was informed that she would be relieved of her interim appointment as Griffith's immediate supervisor as early as May 10th, 2021. *Id.* at 21-22.

---

[7] Chronologically, Griffith received the Disciplinary Action about:
- 9 days after Griffith addressed Megan Shaw's behavior and Griffith requested reasonable accommodations;
- 4 days after the investigation, private messages, and proof of Griffith's escalations (and direct communications regarding those escalations) to Megan Shaw;
- 3 days after Megan Shaw and HR informed Griffith he did "nothing wrong" regarding any matter Megan Shaw and HR knew of and disclosed to Griffith by April 20th, 2021.

17. Since May 3rd, 2021, egan Shaw and HR did not meet with Griffith to discuss any matter; per and since the Corrective Action in the Disciplinary Action, Griffith signed out to Megan Shaw or HR, where either validated Griffith's workdays as satisfactory. *Id.* at 22.

18. On May 10th, 2021, Megan Shaw and HR ("Juliette Maddox") met with Griffith in an unscheduled meeting and terminated him "at will" (*See* Dkt. #28, Answer 14.1. at 6.) because "it wasn't working out" (*See* Dkt. #13, "Factual Background" at 8, para 4.). Dkt. #1 at 22.

   a. HR ("Juliette Maddox", "Crystal Thudium", "Michele Speicher") did not deliver an "abuse report" to Griffith, so Griffith did not have the complete "abuse claim documentation" ("abuse affidavit" and "abuse report") to facilitate officialized reasonable accommodations prior to his termination. *See* Dkt. #1 at 20.

19. By June 2021, North Carolina Unemployment Insurance determined that Griffith was not terminated due to "misconduct"; Defendant did not Appeal this decision. [8] *Id.* at 25-26.

20. In January 2022, Griffith filed an EEOC Charge against Defendant.

   a. "Michele Speicher" was appointed to represent Defendant in Griffith's discrimination claims.
   b. "Christine Green", then of Stanton Law, LLC., was appointed as legal counsel is Griffith's termination claims against Defendant.

---

[8] By May 10th, 2021, Defendant (and its personnel) owned procedural and evidentiary history that informed Griffith's Wrongful Termination claims.

21. By March 30th, 2022, Defendant did not respond to mediation, converting the matter to an investigation;  "Christine Green" informed EEOC Investigators that "[Defendant] takes all abuse claims seriously". This allegation (with "Michele Speicher" in attendance):

    a. implied that Virginia's EEOC Charge was the first time Defendant received *any* allegation of abuse from Griffith, *and*

    b. (informed Griffith that) Griffith's termination was the "serious" response of Megan Shaw and HR after their joint ownership and review Griffith's "abuse affidavit", disputing the Disciplinary Action.

22. By March 31st, 2022, EEOC issued a Right to Sue.

23. By about April 1st, 2022, Griffith inquired about reinstatement; Defendant did not respond.

24. Following Defendant's offer of "$5, 000.00" by about April 18th, 2022 (in response to Griffith initial Settlement Request), Griffith and "Christine Green" engaged "settlement negotiations"; "Michele Speicher", Defendant's representative, was included in these negotiations by July 2022. *Id.* at 28-35.

25. By August 10th, 2022, Griffith was willing to let go of the anger represented in his earlier settlement request. *Id.* at 33-35.

    a. Defendant could truthfully answer the accompanying questionnaire (*Id.* at 33), and thus, only had to release the belief that its personnel did not engage in any wrongdoing by Griffith's termination (and since).

## IV.  ARGUMENTS

9

A. DEFENDNAT OWNS THE PROCEDURAL AND EVIDENTIARY HISTORY OF GRIFFITH'S WRONGFUL TERMINATION CLAIMS

By October 15th, 2024, Defendant's Motion to Dismiss certified that Griffith's claims (now in the form of Virginia's EEOC Charge) were "true". Then, in order to dismiss Griffith's claims (and intentionally corrupt the judicial record), Defendant "characterized" a narrative where:

- Griffith had "repeated meetings" with "Megan Shaw and HR" (prior to April 23rd, 2021);
- Griffith had "repeated meetings" with "Megan Shaw and HR" regarding alleged "insufficient performance" (prior to April 23rd, 2021); and
- Defendant "did not" have evidence or knowledge of a "dispute" where Griffith contested a meeting alleging insufficient performance.

On June 11th, 2025, Defendant submitted an Answer; Defense attested to reviewing Griffith's "abuse affidavit", delivered to HR on April 27th, 2021.

Defendant provides that it owns knowledge and evidence of Griffith's "dispute" to the *only* meeting which alleged insufficient performance against him – the Disciplinary Action meeting, occurring on April 23rd, 2021. This document restores Griffith's factual work history to that of the EEOC Charge, "true", and provides the answer

10

"Yes" to each question in the Settlement Letter, delivered to Defendant on August 10th, 2021. *Id.* at 33.

B. DEFENDANT OWNS THE PROCEDURAL AND EVIDENTIARY HISTORY OF GRIFFITH'S RETALIATION CLAIM

On August 12th, 2022, "Mr. Kevin Cosgrove", then of Hunton Andrews Kurth, represented "Megan Shaw", "Michele Speicher", and "Christine Green" (Datavant's "personnel"), in a Protective Order campaign against Griffith. See Dkt. #28, Answer 9 at 5.; *See* Dkt. #17 at 2, para 4. This campaign was pursued after:

    a.  Griffith pursued an EEOC Charge informing the events leading up to and including Griffith's termination;

    b.  Griffith obtained a Right to Sue and engaged settlement negotiations;

    c.  Datavant and Stanton Law, LLC received Griffith's disability determination (*See* Dkt. #1 at 31.);

    d.  Griffith publicly reported his experience on LinkedIn.

Defendant provides that it engaged this campaign against Griffith due to the manner in which he is situated (*See* Dkt. #28, "Fourteenth Defense" at 12.). *See* Dkt. #1, Fact 9.

C. DEFENDANT'S MOTION TO DISMISS PROVIDES EVIDENCE OF FRAUD

In Defendant's Motion to Dismiss, Defendant exploited the absence of a narrative, specifically between April 21st, 2021-April 22nd, 2021 (See Dkt. #1 at 16-19), and "convoluted" Griffith's factual work history with fraudulently "characterized" allegations, contesting Griffith's factual work history. See Dkt. #13, "Factual Background" at 7-8, para 3.

11

Defendant's Motion to Dismiss consciously:

- forewent veracity and contested Griffith's factual work history, while Defendant owned the procedural and evidentiary history of Griffith's Wrongful Termination claims. This violated Rule 12.
- contained certified "characterizations" that contested Griffith's factual work history, while Defendant owned the procedural and evidentiary history of Griffith's Wrongful Termination claims. This violated Rule 11.

Defendant's Motion to Dismiss misrepresented and mischaracterized Griffith's factual work history, using deceit and trickery to achieve the endeavor.

D. EVIDENCE OF DISCOVERY ABUSE BY DEFENDANT

Defendant owned the procedural and evidentiary history of Griffith's Wrongful Termination claims since May 10th, 2021, and withholds the single document that establish the claims' trueness.

Defendant's demonstrated use of discovery thus far has been two-fold: prolong/obstruct the disclosure of Griffith's "abuse affidavit" and manipulate the Court into punishing Griffith for failure to provide evidence it owns and has controlled since April 27th, 2021, evidenced by its failure to provide truthful and complete representations to the Court, resorting to the use of fraudulent "characterizations" in its Motion to Dismiss.

E. GRIFFITH'S OBJECTIONS TO DISCOVERY

Under Rule 26:

12

- Grifith objects to Defendant's discovery requests for information by May 10th, 2021 – Defendant owns the procedural and evidentiary history of events leading up to and including Griffith's termination.

- Griffith objects to Defendant's discovery requests for any information after May 10th, 2021 – Defendant owns the procedural and evidentiary history of events leading up to and including Griffith's termination, relevant to the Arguments and Defenses presented by Defendant.

- Griffith objects to Defendant's discovery request for any information from Griffith – any information outside of the procedural and evidentiary history owned by the Defendant is disproportionate to the needs of the case.

- Griffith objects to Defendant's discovery request for any information from Griffith – Defendant provides that the core of its defense is to use the truth of Griffith's claims against him, effectively "gaslighting" Griffith – a form of psychological abuse – continued since the day Griffith reported it (on April 23rd, 2021) and officialized in the "abuse affidavit" on April 27th, 2021.

Due to Defendant's retaliative effort against Griffith on August 12th, 2022, Griffith cannot confer with the Defendant regarding any matter in this case.

Due to Defendant's current engagement of fraud in these proceedings, concealing specific evidence that would establish Griffith's claims as a matter of law, Griffith cannot reasonably expect Defendant to comply with any discovery request Griffith makes.

F.  PROTECTIVE ORDER AGAINST DEFENDANT IS REQUIRED

On February 9th, 2026, after the Court learned the Defendant provided evidence of Griffith's "dispute" (it previously denied), Russ stated that it would not concede to its ownership and existence. Hodgson Russ's answer was both withholding evidence and providing an evasive answer to a direct inquiry to ownership of the evidence it has been controlling during the Course of this case.

Defendants' conduct demonstrates fraud, obstruction, and delay.

A Protective Order is warranted to:

- Control the scope of discovery
- Shift burden to Defendant
- Protect from overreach
- Block abusive discovery tactics
- Sequence Discovery to Defendant's production first

Under Rule 37, the Court may Compel Defendant to disclose relevant information to this case. To date, it is the "abuse affidavit", delivered to HR on April 27th, 2021.

## V.  RELIEF REQUESTED

Griffith respectfully request that the Court:

1. Issue a Protective Order, limiting Defendant's discovery requests;
2. Compel Defendant to produce the "abuse affidavit" delivered to HR on April 27th, 2021;
3. Grant such other relief as the Court deems just and proper.

## VI.  CONCLUSION

Griffith is complying with discovery. Defendant establishes that it owns the complete procedural and evidentiary history required to establish Griffith's

14

claims. Defendant provides a well-documented history of fraud to dismiss Griffith's claims as early as August 12th, 2022, in Hampton General District Court.

Dated: March 17th, 2026                    Respectfully Submitted,

Chad Griffith
chadgriffith87@gmail.com

15